PARKINSON HEATER CORPORATION et al. v. A. GOLDENSTEIN, Inc.

No. 7767.

District Court, E. D. New York.

Feb. 10, 1937.

Murray H. Marker, of New York City (Stockbridge & Borst, by George T. Gill, of New York City, of counsel), for plaintiffs.

Keppler & Keppler, of New York City, for defendant.

ABRUZZO, District Judge.

This is a suit based upon United States letters patent No. 1,834,070, issued December 1, 1931, for what is known as an "instantaneous" or "tankless" water heater.

The plaintiff Parkinson Heater Corporation is the owner of the patent in suit, and the plaintiff Parkinson Heating Appliances, Inc., is the exclusive licensee under the patent in suit in certain territory, particularly that territory embraced by the Eastern District of New York.

The plaintiffs claim that A. Goldenstein, Inc., has infringed upon the United States

letters patent as aforesaid by making and selling water heaters that are covered by these letters patent.

The plaintiffs, in their brief, have said that in order to succeed they must show the following:

"1. The existence of the Parkinson Heater Corporation;

"2. The existence of the Parkinson Heating Appliances, Inc.;

"3. Title to the patent in suit in one of the plaintiffs;

"4. An interest in the patent in suit in the other plaintiff;

"5. The existence of the defendant; and

"6. Infringement of the patent by the defendant.

"Failure on the part of plaintiffs to show (1), (3), (5) and (6) above entitled the defendant to a decree in its favor. If these four allegations are proven, the defendant must prove, if it be entitled to a decree.

"7. That the patent in suit is invalid."

As to "1. The existence of the Parkinson Heater Corporation," this has been completely established and the Court so finds. As to "2. The existence of the Parkinson Heating Appliances, Inc.," the court finds that this also has been established. It will readily be seen from a copy of the patent in suit that title to this patent is in the plaintiff Parkinson Heater Corporation, and the court so finds. That the Parkinson Heating Appliances, Inc., is shown to be a proper party plaintiff due to its exclusive license has amply been proved under item numbered 4 on page numbered 3 of plaintiffs' brief. The corporate existence of the defendant is not disputed under item numbered 5 on page numbered 3 of plaintiffs' brief, and that existence is so found by the court. The only question left open is whether or not there has been an infringement of the patent in suit and whether or not the patent is valid. The court will take up these issues in their inverse order.

The patent is for an "instantaneous" or "tankless" water heater for heating domestic hot water as the same passes through the heater in full flow, thereby eliminating the use of a storage tank. Before the work of John J. Parkinson, the patentee of the patent in suit, it was the practice to provide a large hot water storage tank and a hot water heater connected to the storage tank. This water circulated slowly, by gravity, from the bottom of the storage tank through the heater and back to the storage tank. Plaintiffs' Exhibit No. 9 is a fair illustration of this type of model.

Parkinson felt that he could heat water without the use of a storage tank or a separate heater. In an earlier patent No. 1,552,641 (Pl. Ex. No. 13), Parkinson discloses a "partition tube" hot water heater. In that particular patent, the heater is disclosed as a series of parallel tubes, in each tube of which there is a partition which divides or splits the tube; this partition stopping just prior to the end of the tube. In operation several of these units were inserted in a boiler and connected in series (Figs. 3 and 5 of patent Pl. Ex. No. 13) and to a preheater at the side of the boiler. The water entered one side of the T-fitting tubes, passed along that part of the partition, and then came out the other side of the T-fitting tubes. These were installed by cutting a number of holes in the boiler (Pl. Ex. Nos. 9 and 14).

This method was found to be impractical by those skilled in the art and no sales of any consequence were made. The lack of sales was caused by serious defects in that model. It was expensive to install and required too many units spread out across the top of the boiler. The units carrying cold water cooled the surface of the water in the boiler, the steam in the boiler condensed, and made it impossible to get up enough steam to heat the building in cold weather. However, it had an important bearing on the art because it eventually caused Parkinson to have the patent in suit issued.

The patent in suit is a simple contrivance. It is for a tankless water heater that eliminates the use of a hot water storage tank (Pl. Ex. No. 1). This patent has two types of heater, the P-type (Pl. Ex. No. 11), and the M-type (Pl. Ex. No. 12).

By agreement, the plaintiffs and defendant have limited the issues to claims 4 and 6 of the said patent. The P-type consists of a heater with a front header (Fig. 3 of patent); it abuts against the front boiler plate when the heater is installed in a boiler. There is a rear header, so called because it is installed near the rear of the boiler. A large tube is provided for the carrying of the water to be heated from the front header to the rear header; and a series of small tubes carry the water from the rear header back to the front header.

These are called "return tubes." The front header is divided by a partition into two chambers, an inlet chamber and an outlet chamber. The large tube through which the water enters communicates with the inlet chamber and the small return tubes communicate with the outlet chamber. The wall of the inlet chamber is provided with an opening which is connected with the city supply of water or a roof tank as the case may be. The wall of the outlet chamber is provided with an opening that is directly connected to the faucets of the house (lines 116–118, page 2, of the patent).

A hole is cut in the front face of the boiler to install this heating apparatus just above the fire tubes of the boiler and below the water line. Of course, the boiler must be kept filled with water. A hole is cut only large enough to receive the rear header, and the front header is slightly larger and is so shaped as to close the opening in the boiler when bolted.

The hot water of the boiler into which the heater is submerged contacts with the outside surface of the tubes of the heater and the water to be heated circulates through the tubes. The heat from the water in the boiler passes through the walls of the tubes and to the water within the tubes thus heating this water. As the boiler water contacting with the tubes of the heater gives up its heat to the water within the heater, it descends and is replaced by other hot boiler water around the tubes of the heater. This causes a continuous circulation of hot boiler water around the tubes of the so-called "instantaneous" or "tankless" heater.

The M-type heater has the front header divided by a partition into inlet and outlet chambers, and a rear header. The difference between the P-type and M-type heaters is that the P-type has a 1½-inch inlet tube extending between the front and rear headers and eighteen 5/8-inch return tubes; while the M-type has twenty-two 5/8-inch tubes, eleven inlet tubes for carrying the water from the front to the rear header, and eleven return tubes. The time it takes for the water to pass through the heater and the heat transfer surface area are approximately the same in both types of heater. The water travels faster through the single large inlet tube and much slower through the return tubes in the P-type heater, while in the M-type the water travels at the same speed in the inlet and return tubes and the heat transfer surface area is divided and balanced accordingly.

The problem that had to be solved by this type of heater was the heating of a large volume of water over a range of one hundred degrees Fahrenheit, and this water had to be drawn from the faucet without adversely affecting the operation of the steam boiler. The heater had to be small and shallow and it could not be very wide in order to fit into the boiler. This type of heater prevented any reduction in the steam chamber and did not cool the surface of the water in the boiler too much. That the plaintiffs' patent in suit did this is amply proved by the fact that one of these heaters is installed in the Martha Washington Hotel, New York City, which has some 440 rooms; it delivers water of a fairly uniform temperature and is much better than the storage tank system it replaced as was evidenced by the testimony of the witness Mr. McCarthy, who worked for the hotel in question. The heater installed at 2015 Foster avenue replaced a storage tank system and seems to be operating satisfactorily. Plaintiffs' Exhibit No. 15 names many such installations which have proved satisfactory.

Claims 4 and 6 of United States letters patent No. 1,834,070 read as follows:

"4. A water heating device, adapted to extend through an opening in a boiler and be submerged in the heated water therein, and comprising inlet and outlet passages grouped to form a relatively flat and wide unit adapted to be mounted in an opening of the boiler and to occupy a shallow space in the heated water of the boiler."

"6. A water heating device adapted to extend through an opening in a boiler and be submerged in the heated water therein, and comprising a horizontally elongated header having an inlet chamber at one end and an outlet chamber at the other end thereof, a large passage leading from said inlet chamber, and small passages leading from said large passage and to said outlet chamber, the total heat exchange surface area of said small passages being greater than that of the large passage."

The defendant disputes that the plaintiffs' patent in suit comes within claims 4 and 6 and contends substantially as follows:

"As to Claim 4

"A. Parkinson's device lacked novelty (he was not the first inventor).

"B.   It was not invention (but merely mechanical skill).

"C.   It was barred by statute.

"1.   It had been patented more than two years prior to Parkinson's application for patent.

"2.   It had been described in printed publications more than two years prior to Parkinson's application for patent.

"3.   It had been in public use or on sale in this country for more than two years before Parkinson's application for patent.

"D. It had not been infringed by defendant.

"1.   It was limited by the specifications and drawings of the Parkinson patent (and as so limited was not infringed.)

"2.   It was limited by the proceedings in the Patent Office (and as so limited was not infringed).

"3.   It was restricted in view of the prior art (and as so restricted was not infringed).

"E.   It had been abandoned by Parkinson.

### As to Claim 6

"A.   It had not been infringed by defendant.

"B.   It had been abandoned by Parkinson."

In condensing the claim of the defendant, the defense can be summarized as follows:

1.   That Parkinson was not the first inventor, and even if he were, it was not an invention but merely mechanical skill.

2.   That it had been barred by statute as it had been patented by others more than two years prior to Parkinson's application; that it had been described in different publications; and that a heater of the same kind as Parkinson's had been sold more than two years before plaintiffs' application for a patent.   And

3.   That it had been abandoned by Parkinson.

As to the defense that Parkinson was not the first inventor, the defendant has advanced the theory that the McGregor patent incorporated every element of claim 4 of the Parkinson patent.   This patent of McGregor's No. 996,657 was issued July 4, 1911.   An analysis shows that the heater inserted in the boiler was directly connected to a storage tank.   The claims of the defendant that the drawings and claims set up by McGregor are an anticipation of the art cannot be sustained, as it is conceded that a separate boiler was to be used in the carrying out of the claims of that patent.

The English patent of Marshall, No. 8,-471, issued in 1911, the defendant states, is an anticipation of the art and that its heater is modeled somewhat after this Marshall patent.   The British patent does not disclose the construction to be used in connecting it up to the hot water supply system and makes no mention that it was intended to utilize the heater as a tankless water heater.   The testimony indicates definitely and demonstrates clearly that this British patent relates to a special type of boiler.   The witness Fettes testified that the patent was inoperative for the purpose disclosed and there were evidently no sales under this British patent as none were proven.   The court cannot accept the theory that it is an anticipation of the art.

All of the other patents cited by the defendant do not teach, nor is there any reference or suggestion of, a unitary tankless water heater.   They could have been of no assistance to Parkinson in the development of his patent as none of these other patents contain the essential features of his.

There remain, however, the two publications of Sweet's Catalog of the issue of 1924–25 and 1925–26, respectively (Def. Ex. C and D).   These publications were published prior to the patent in suit, dated 1928 and issued in 1931.   The contention of the defendant that these publications anticipated the prior art and could have guided, assisted, and helped Parkinson materially in the development of his invention is untenable.   Of these publications only one mentions a tankless heater, and that one is the 1925–26 issue of Sweet's Catalog, p. 1889, which shows the advertisement of Ferguson & Lang, stating:

"B.St. tankless systems are of the same construction as where the storage tanks are used, with the exception of the method of connecting.

"The tankless system can be installed at quite a saving over the storage tank system. You save the tank, tank stands, cost of handling and connecting, also a large amount of floor space.

"The tankless system is adaptable to any size building and to most types of heating boilers."

There is no disclosure as to the method of connecting up these heaters.   The only

286

testimony before the court with respect to the Ferguson & Lang heater is found in the testimony of Fettes. He stated that the first Ferguson & Lang heater he knew of was made in 1927, which does not go back far enough to anticipate the art of the plaintiffs' patent, which was filed in May, 1928. Fettes testified that the Ferguson & Lang installations required thirty-six units in a series to be properly connected. This is not an anticipation of the art in the patent at issue, and therefore the first defense of the defendant necessarily falls.

■ The plaintiffs' heater follows claims 4 and 6 substantially and any one skilled in the art would have no trouble in making a tankless heater; it was a primary invention; it advanced the art substantially and was of real merit for which the inventor deserved his reward. Eibel Process Company v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523. The court finds that it was not merely mechanical skill but a real substantial advance of the art and a novel, new invention. It had not been in use for more than two years prior to the application of Parkinson's patent, nor had it been described sufficiently in printed publications to inform one skilled in the art how to make such a heater as that in the patent in suit. There was no testimony as to prior use and sale more than two years before Parkinson's application for his patent, and the court finds that claims 4 and 6 of plaintiffs' patent should be sustained.

Parkinson had not abandoned his patent and in the patent in suit his prior patent was cited, showing that the patent at issue is definitely different in all respects from the one first issued to Parkinson. In view of the foregoing, claims 4 and 6 of plaintiffs' patent are sustained.

■ On the question of infringement the plaintiffs claim that the defendant makes and sells a tankless water heater that infringes on claims 4 and 6. The issue of infringement was limited to these two claims by stipulation. There is no dispute as to the fact that the defendant makes and sells tankless water heaters as was borne out by the heater of the defendant produced upon the trial and the circulars issued by it.

The defendant's heater consists of a front header divided by a partition into inlet and outlet chambers, and fifteen U-bend, 5/8-inch tubes. These tubes extend perpendicular to the header and have one end of each tube connected to the inlet chamber of the header and the other end of each tube connected to the outlet chamber, so that there are fifteen 5/8-inch inlet tubes and fifteen return tubes of the same size. The only essential difference between the defendant's heater and plaintiffs' M-type heater is that the plaintiffs use a rear header and the defendant uses U-bends in the tubes instead of a rear header.

The plaintiffs' heater is relatively flat and wide so that it occupies a shallow space in the heated water of the boiler; so is the defendant's. The plaintiffs' heater is contained in a single unit, it is of small cross-section so that it does not extend into the steam chamber and so that it does not extend across the surface of the heated water of the boiler; so is the defendant's. The plaintiffs' heater is constructed so that it can be inserted in an opening made in the boiler; likewise, the defendant's.

The plaintiffs' heater has been on the market for quite some time; to be exact, from 1928 to 1933; and the business of the plaintiffs has risen steadily in that time. It has reached a point where it amounts to $500,000 per year. This volume of business is indicative of the merit of plaintiffs' invention. Imitation by the defendant shows clearly that the defendant thinks highly of the patented heater. The defendant's heater is undoubtedly modeled after the plaintiffs'. The defendant has infringed upon the patent in suit.

Submit decree in favor of the plaintiffs in accordance with this decision.